

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-13-2007

# Li v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-3427

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Li v. Atty Gen USA" (2007). *2007 Decisions.* Paper 223.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/223

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 06-3427

———————

XIU CAI LI,
                    Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES

———————

PETITION FOR REVIEW OF A DECISION OF
THE BOARD OF IMMIGRATION APPEALS
Agency No. A95-673-377
Immigration Judge: Charles M. Honeyman

———————

Submitted Under Third Circuit LAR 34.1(a)
September 28, 2007

———————

Before: McKEE, BARRY, and FISHER, Circuit Judges

(Opinion Filed: November 13, 2007)

———————

OPINION

———————

BARRY, Circuit Judge

**I.**

Petitioner Xiu Cai Li seeks review of a final order of the Board of Immigration

Appeals ("BIA") affirming the Immigration Judge's ("IJ") order denying her application

for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. Where, as here, the BIA affirms and adopts the IJ's decision without opinion, we review the decision of the IJ. Xia Yue Chen v. Gonzales, 434 F.3d 212, 216 (3d Cir. 2005). We will deny the petition for review.

## II.

The procedural history and facts of this case are well known to the parties, and need not be reprised in any detail. Simply stated, Li, a citizen of the People's Republic of China, entered the United States without documentation on August 11, 2004. She was served with a Notice to Appear charging that she was inadmissible as an immigrant not in possession of valid entry documents in violation of section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Li conceded the charge.

On February 2, 2005, Li filed an application for asylum and withholding of removal based on political opinion and membership in a particular social group, and for protection under the CAT. At a February 14, 2005 hearing before the IJ, she testified that shortly after her grandfather became ill, she called her aunt, who told her about Xiang Gong, a meditative Chinese practice known to have healing effects, and sent her materials concerning its teachings. Li and her family began to practice Xiang Gong, and her grandfather's health improved. In February and March of 2004, she and her family began to tell friends and neighbors about the "good news" of Xiang Gong. In April 2004, while

2

Li was away from home, the police arrested her parents, siblings, and her cousin's wife, who was pregnant with her third child. Li's parents were beaten and interrogated and forced to renounce Xiang Gong. Her cousin's wife was fined 15,000 RMB and a forced abortion was performed. Upon learning of these events, Li hid at her uncle's house. Believing she would be safer, Li's family sent her out of the country.

On February 14, 2005, the IJ, in an oral decision, denied Li's application and ordered her removed, concluding that, aside from separate burden of proof issues, a "plethora of credibility problems" warranted an adverse credibility finding. (A.R. 75-76.) The IJ found that Li's application contained omissions and inconsistencies and that there were discrepancies between the application and her testimony, with her explanations "implausible." By order dated June 19, 2006, the BIA adopted and affirmed the IJ's decision, found that the adverse credibility determination was not clearly erroneous, and dismissed the appeal. Li now petitions for review, arguing that the adverse credibility determination was not supported by substantial evidence and that she not only has a well-founded fear of persecution were she to be returned to China, but that it is more likely than not that her life or freedom would be threatened, including by torture, because of her participation in the practice of Xiang Gong.[1]

---

[1] Li understandably does not renew the claim she made to the IJ that she was approaching "marriage age" and might get married at some point in the future, thus facing – after she had one child – an IUD insertion or sterilization.

## III.

An alien may qualify for asylum if he or she can demonstrate "past persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." INA § 208(b)(1), 8 U.S.C. 1101(a)(42)(A). To be eligible for withholding of removal, the applicant must establish a "clear probability" that his or her life or freedom would be threatened in the proposed country of removal. He Chun Chen v. Ashcroft, 376 F.3d 215, 223 (3d Cir. 2004). To obtain relief under the CAT, an applicant must demonstrate that it is more likely than not that he or she will be tortured in that country. 8 C.F.R. § 208.16.

We review the decisions of immigration judges, including adverse credibility determinations, under the substantial evidence standard, which requires us to ascertain "whether the determination is supported by evidence that a reasonable mind would find adequate." Dia v. Ashcroft, 353 F.3d 228, 249 (3d Cir. 2003) (en banc). It is a high standard. Only "if no reasonable fact finder could make that finding on the administrative record" will the finding not be supported by substantial evidence. Id. An IJ's adverse credibility determination must be based on "specific, cogent reason[s]," and "not on speculation, conjecture, or otherwise unsupported personal opinion[s]." Id. at 250. "Minor discrepancies that do not go to the 'heart of the . . . claim' do not merit an adverse

4

credibility finding," Gabuniya v. Att'y Gen., 463 F.3d 316, 321 (3d Cir. 2006) (ellipses in original). [2]

## IV.

The IJ found that Li had failed to meet her burden of proof, primarily resting that conclusion on an adverse credibility determination. Although it seems, at least to us, that certain of the problems the IJ identified in support of the adverse credibility determination were minor in the extreme, substantial evidence nonetheless supported that determination.

We begin with what we believe to be the more minor problems. For one, Li's application states:

> The police threatened my parents . . . . They demanded my parents to sign letters stating they would renounce the heretical beliefs and not disturb the people around with superstition. They also demanded a fine of 15,000 RMB due to my cousin's wife being discovered.

(A.R. 317.) When the IJ asked who was fined the 15,000 RMB, Li responded, "My cousin's wife." (A.R. 121.) The IJ then asked why the application seemed to suggest that Li's parents were fined. Li responded: "Application? It should be that my cousin's wife is the one being fined for 15,000." (A.R. 121-122.) Li repeated that it was her cousin's wife that was fined, but that she did not know the exact details because she had heard

---

[2] Applications for asylum, withholding, or other relief from removal made after May 11, 2005 are subject to new standards regarding credibility determinations which allow the factfinder to consider inconsistencies, inaccuracies, and falsehoods in an applicant's statements without regard to whether they "go[ ] to the heart of the applicant's claim." REAL ID Act of 2005, 8 U.S.C. §§ 1158(b)(1)(B)(iii), 1231(b)(3)(C), 1229a(c)(4)(C). Li filed her application on February 2, 2005 and is subject to the INA prior to the amendments.

about this from her father. The IJ concluded that this testimony was inconsistent with the application and was a "significant credibility factor." (A.R. 76.)

To be sure, the testimony appears inconsistent with the application but we do not understand what was so "significant" about it in terms of Li's credibility even if the application was, as the IJ said, prepared by current counsel rather than a non-attorney community preparer. Whether her cousin's wife or her parents were fined for the wife's violation of the one-child policy had no bearing on whether Li has a well-founded fear of persecution or would be tortured if returned to China because she practiced Xiang Gong before she fled.

Another problem identified by the IJ which, again, was minor at best, was the omission of Li's siblings' arrest from her application. Li testified, however, that her siblings were detained for only an hour or two for the purpose of "education" and were then released to school. Again, this minor omission did not go to the heart of her claim and, in our view, provides little, if any, support for the adverse credibility determination.

But the decision of the IJ went well beyond these minor difficulties. First, the IJ identified an inconsistency between the application and the supporting affidavit. In the application, Li stated that her aunt sent tapes and books to her family so that they could learn the practice of Xiang Gong, but Li's affidavit stated that <u>she</u> brought the materials to her family. In her testimony, Li tried to explain the inconsistency, unsuccessfully in our view, by stating that because she called her aunt and asked for the materials, she "brought" the materials to her family. It appears to us, as it did to the IJ, that Li was

6

attempting to portray herself as the instigator of the family's involvement with Xiang Gong, presumably to make it appear more likely that she would be persecuted if she were to return to China. In this connection, Li also testified that her father told people in the community that she was the one responsible for acquiring the materials. The IJ concluded that, given the Chinese government's view of Xiang Gong, it was "highly suspicious" and "somewhat incredulous" that the family would attempt to pin the blame on Li for acquiring the materials. (A.R. 77.)

The IJ also found an omission from the application that he believed to be significant because it went to the heart of Li's claim. We agree. Li testified that she spoke to her father two months before the hearing. It was during this phone call that her father supposedly told her that the police continued to come to their home and asked the family about her whereabouts. When the IJ asked Li why she failed to include this information in her application (information which even she concedes would "certainly have bolstered the application," Pet. Br. at 17), Li responded only that she failed to do so because the application form was not very detailed. The IJ also noted, importantly, that there is "no evidence," aside from being asked about Li's whereabouts, that after the one incident in April 2004, the family has had any problems whatsoever. This, too, was a "significant credibility factor." (A.R. 77.) It was "implausible," in his view, and even if the rest of her story were true, that the police would focus on Li rather than the heads of the household. At minimum, he believed, she was "embellishing" her claim to make it

7

appear that she was viewed by the police as the ringleader in spreading Xiang Gong. (A.R. 79.)

The adverse credibility determination aside, the IJ also found it "striking" that at the hearing Li did not produce the aunt with whom she was then living or even her affidavit to corroborate Li's testimony as to a conversation the aunt had with Li's father, in which her father purportedly described the reasons why Li came to the United States. (A.R. 77-78.) The IJ found such corroboration to be both reasonable and expected, and Li's explanation that her aunt would have been nervous and, in any event, the information not needed, was "implausible." (A.R. 78.) And the IJ reasonably expected that there would have been some written communication from Li's parents who, after all, could presumably have corroborated her testimony in critical respects.[3] There was nothing.

## IV.

Because substantial evidence supports the BIA's conclusion adopting and affirming the IJ's determination that Li did not present a credible claim for asylum, withholding of removal, or relief under the CAT, the petition for review will be denied.

---

[3] We reject Li's argument that the IJ did not identify the facts for which it would have been reasonable to require corroboration or discuss whether Li had adequately explained her failure to do so. See Abdulai, 239 F.3d at 551-54 (citing In re S-M-J-(Interim Decision), 21 I. & N. Dec. 722 (B.I.A. 1997)). And, while we agree with Li that credibility and sufficiency of the evidence are analyzed differently, the more evidence corroborating one's story, the easier the credibility call. That, we believe, is all the IJ meant to suggest when he said, at A.R. 79, that Li had not produced any corroborating evidence that would rehabilitate her credibility.

8